2008 OK CIV APP 101

In the Matter of the SALES TAX CLAIM FOR REFUND OF the HOME DEPOT. The Home Depot U.S.A., Inc., Appellant,

v.

Oklahoma Tax Commission, Appellee.

No. 105,031.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 17, 2008.

Rehearing Denied Aug. 15, 2008.

Certiorari Denied Nov. 10, 2008.

Richard B. Kells, Kevin B. Ratliff, Hartzog, Conger, Cason & Neville, Oklahoma City, Oklahoma, for Appellant.

Douglas B. Allen, General Counsel, Guy L. Hurst, Assistant General Counsel, Elizabeth A.P. Cates, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Appellee.

KENNETH L. BUETTNER, Presiding Judge.

¶1 On September 15, 2003, The Home Depot (Home Depot) filed a sales tax refund claim with the Oklahoma Tax Commission, claiming it had paid sales tax on accounts that had become worthless for the period August 1, 2000 through July 31, 2003.[1] The claim was denied and Home Depot requested a hearing. After an evidentiary hearing, the Oklahoma Tax Commission (OTC) adopted the findings of fact and conclusions of law of the Administrative Law Judge in which it determined that Home Depot had not established its right to statutory relief pursuant to 68 O.S.2001 § 1366.[2] OTC found that Home Depot's private label credit card company owned the accounts receivable and estab-

---

1. The Oklahoma Supreme Court granted the parties' Joint Motion to Seal Record on Appeal. This Court reviewed the record for the purpose of determining "... whether the findings and conclusions [of the Tax Commission] set forth in the order are supported by the substantial evidence." *Hiland Dairy Foods Company, LLC v.* *Oklahoma Tax Commission,* 2006 OK CIV APP 68, ¶8, 136 P.3d 1072, 1074. Therefore, reference to the record is necessarily circumscribed.

2. 68 O.S. § 1366 was amended effective November 1, 2003.

lished the debtor-creditor relationship with Home Depot's customers. Because the evidence does not support a deduction by Home Depot under § 1366, we affirm the order of the Oklahoma Tax Commission.

¶ 2 When reviewing an order of the Oklahoma Tax Commission, "[t]he appellate courts will review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence. An adjudicatory order will be affirmed on appeal if the record contains substantial evidence in support of the facts upon which the decision is based and the order is otherwise free of error." *Samson Hydrocarbons Company v. Oklahoma Tax Commission,* 1998 OK 82, ¶ 5, 976 P.2d 532, 535.[3]

¶ 3 Home Depot does not challenge OTC's order with respect to being based on substantial evidence. We have read the record and find that the order is based on substantial evidence. Home Depot's concerns are "other error" which we address in the order briefed.

¶ 4 The issue tried was whether Home Depot had sustained its burden of establishing the right to statutory relief as provided in 68 O.S.2001 § 1366 and OAC 710:65–11–2. Title 68 2001 § 1366, **Credits,** states:

> Taxes paid on gross receipts represented by accounts receivable which, on or after December 31, 1990, are found to be worthless or uncollectible and that are eligible to be claimed if the taxpayer kept accounts on a cash basis or could be eligible to be claimed if the taxpayer kept accounts on an accrual basis, as a deduction pursuant to Section 166 of the Internal Revenue Code, or the unpaid portion of any account at the time repossession is accomplished under the terms of a conditional sales contract, may be credited upon subsequent reports and remittances of the tax levied in this article, in accordance with the rules and regulations of the Tax Commission. If such accounts are thereafter collected, the same shall be reported and the tax shall be paid upon the amount so collected.

¶ 5 First, Home Depot argues that it is contrary to Oklahoma law to deny it a refund of sales tax it remitted in advance to the State on uncollectible accounts, and that the result is an unjust windfall to the State of Oklahoma.[4] Home Depot stipulated that Monogram Bank of Georgia (Monogram & GE Capital were two of the private label credit card issuers) owned the accounts, and that Monogram included a bad debt deduction under § 166, I.R.C. on its federal tax return. However, Home Depot claimed that it bore the risk of loss for bad debts because it prepaid the private label credit card issuers for bad debts by paying service fees and transferring significant other value. Home Depot refers this Court to the affidavit testimony of a Vice President for Monogram Credit Card Bank of Georgia [currently named GE Money Bank] who states that "Monogram's negotiated purchase price of the accounts includes servicing and collection costs, which incorporates a bad debt loss component, resulting in an overall Program Cost. The bad debt loss component represents retention of an economic risk of loss on the accounts by Home Depot." OTC conceded that Home Depot was responsible for the service fee. It found:

> 26. A Service Fee was deducted from the amount Claimant [Home Depot] received on all sales under the Business Agreement and Commercial Agreement. (fn. Claimant's Exhibits 1 and 2 (Schedules 5.03). Tr. 87–88)

> 27. When customers of Claimant purchase items using a private label credit card, GE Capital finances the purchases and the customer makes payments to GE Capital. GE Capital pays Claimant the amount of the purchase, *including sales*

---

3. "In a protest hearing before the Tax Commission, the protestant bears the burden of proving it is entitled to the relief requested." *Hiland Dairy Foods Company, LLC, v. Oklahoma Tax Commission,* 2006 OK CIV APP 68, ¶ 8, 136 P.3d 1072, 1074.

4. We have not been directed to any authority that a tax refund may be based upon the argument of an unjust windfall to the taxing authority.

*tax*, less the Service, if applicable. For example:

> Assuming a private label credit card sale of $100.00 and a sales tax of 8%, the customer is charged $108.00 ($100.00 + $8.00 sales tax) on the private label credit card. GE Capital pays Claimant $108.00, less the Service Fee. (fn. Tr. at 89)

28. The Claimant then reports and remits the sales taxes received from GE Capital to the Tax Commission. (fn. 19, Stipulation, ¶ 11, and Joint Exhibits 14 through 30. Tr. at 89).

¶ 6 Pursuant OAC § 710:65–11–2, only the person who remitted and reported the tax to the Commission may be allowed the tax credit. Specifically, OAC § 710:65–11–2(e), the rule in effect at the time in question, states:

> The credit for bad debts is limited to the tax shown on the invoice that is being or will be charged off as a bad debt and must be adjusted to reflect any remuneration previously taken on a sales tax report. **This tax credit is allowable only to the person who remitted and reported the tax to the Commission.** Subsequent recoveries of bad debts that have been taken as a credit are to be reported in the month of the recovery. [See: 68 O.S. § 1366] (Emphasis added.) [5]

▌ ¶ 7 We express no opinion on the efficacy of this rule, because it would impact the ability of the private card issuers to claim a refund, which is not at issue here. Nonetheless, Home Depot, because of the agreement it made with the private credit card issuers, was not eligible to take a deduction under § 1366. There is no evidence that Home Depot could deduct the Service Fee,

or a portion of the Service Fee, as a bad debt pursuant to Section 166 of the Internal Revenue Code. Rather, Home Depot stipulated the Service Fee was deducted on its federal tax return as a "credit card discount." That being so, Home Depot could not satisfy its burden of proving a right to a refund of sales tax under that statute. Section 1366 implicitly requires the owner of the bad debt account to be the entity allowed the deduction where it also requires the owner to report subsequent collections of bad debt accounts as income. We affirm the Oklahoma Tax Commission's order.

¶ 8 Home Depot contends that OTC's decision converts the vendor (Home Depot) from a trustee (tax collector) into a taxpayer without any legislative authority. Home Depot approaches its complaint, that is, that it has paid a sales tax and believes it has no recourse for refund for its customers who defaulted, from a different angle. Nonetheless, the statute is clear: Home Depot had to have been eligible to take a deduction pursuant to § 1366 and it was not. That was the choice it made when it fashioned the agreement with the private credit card issuers. After the initial transfer of the accounts, Home Depot could suffer no further benefit nor detriment with regard to the credit card accounts. There is no error on this account.

¶ 9 Home Depot also claims that OTC has collected sales tax on an amount greater than authorized by the legislature. For this reason, it asserts that it is entitled to a refund for the amount it overpaid independently of § 1366. Home Depot cites *Duncan Medical Services v. State ex rel. Oklahoma Tax Commission,* 1994 OK 91, 911 P.2d 247 in support of this proposition.[6] We do not find that

---

5. The current rule, OAC 710:65–11–2(f)(2004) states: The deduction for bad debts is limited to the amount shown on the invoice that is being or will be charged off as a bad debt. **This tax deduction is allowable only to the person who remitted and reported the tax to the Commission.** Subsequent recoveries of bad debts that have been taken as a deduction are to be reported in the month of the recovery. [See: 68 O.S. § 1366] (Emphasis added.)

6. "Although it was impossible to ascertain the gross receipts or gross proceeds at the time of the taxable transaction and at the time the sales tax was required to be reported and remitted,

that impossibility was removed by the time the field audit was conducted and the proposed assessment was issued. The field audit and assessment provisions of § 221 are pervasive governmental actions to assure that 'the correct amount of tax for the taxable period' is paid. The assessment powers vested in the OTC by § 221 may be used to collect the correct amount of the consumer sales tax levy from the vendor, but an assessment may not be used to penalize improper vendor reporting where the consumer sales tax for the taxable period has been paid." *Duncan Medical Services v. State ex rel. Oklahoma Tax Commission,*

*Duncan Medical Services* stands for that proposition and decline to adopt it. Title 68 O.S.2001 § 1366 controls this matter and Home Depot has not carried its burden of proving a right to a sales tax refund pursuant to its terms.

¶ 10 Finally, Home Depot argues that OTC's position results in inequities between similarly situated taxpayers in violation of the United States and Oklahoma constitutions. It compares itself to those vendors who are eligible to take bad-debt write-offs and who would therefore be entitled to a refund in otherwise similar circumstances, such as self-financed sales operations. However, the circumstances would not be similar and Home Depot has not shown that other retailers with similar private credit card agreements are treated differently.

¶ 11 AFFIRMED.

MITCHELL, V.C.J., and JOPLIN, J., (sitting by designation), concur.